## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| TLM OPERATIONS, LLC, | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| vs. | **Case No. 2:23CV00788 DAK-DBP** |
| ALLIED UNIVERSAL RISK ADVISORY AND CONSULTING SERVICES, INC., | **Judge Dale A. Kimball** |
| **Defendant.** | **Magistrate Judge Dustin B. Pead** |

This matter is before the court on Defendant Allied Universal Risk Advisory and Consulting Services, Inc.'s ("Allied") Motion for Summary Judgment and on Allied's Motion for Spoliation Sanctions. On July 10, 2025, the court held oral argument on the two motions. At the hearing, Allied was represented by Tucker F. Levis. Plaintiff TLM Operations, LLC ("TLM"), was represented by Travis J. Phelps. At the conclusion of the hearing, the court took the matter under advisement. Now being fully informed, the court issues the following Memorandum Decision and Order granting Allied's Motion for Summary Judgment and granting in part its Motion for Spoliation Sanctions.

## I. SUMMARY

This suit arises because, according to TLM, Allied failed to timely pay various invoices for TLM's security services, which allegedly had a catastrophic effect on TLM's business. TLM claims that its business operations were dependent on timely payment from Allied, so the untimely payments led to significant problems for TLM, including a loss of employees because it could

1

not pay them, a loss of clients, and an inability to secure prospective new clients. Moreover, TLM also claims that Allied's failure to timely pay TLM's invoices led to a shortage of funds that were necessary to merge with another company, Defense Security, which would have brought significant revenue to TLM. TLM claims that the company was set to be purchased for $855,000, but that Allied's failure to timely pay the invoices ruined the sale. Although TLM admits that Allied ultimately paid the past-due invoices, TLM contends that the untimeliness of the payments "bankrupted TLM." Consequently, TLM seeks more than $2,000,000 in consequential damages for Allied's destruction of TLM.

In the lawsuit, TLM has asserted multiple claims against Allied, including (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious interference with economic relations; (4) unjust enrichment and/or quantum meruit. But TLM concedes that it has no documentation to prove any of its claimed consequential damages. According to TLM, it maintained all its records in a leased office, but TLM allegedly lost access to these records when it failed to pay rent and was evicted, which TLM asserts resulted from Allied's late payments. To calculate its requested $2,000,000 in consequential damages, TLM has relied solely on the oral testimony of its sole owner, Charlie Tautuaa ("Mr. Tautuaa"), who had allegedly reviewed all relevant documents prior to the eviction.

Allied, however, contends that oral testimony from TLM's owner about the various claimed consequential damages is speculative and unsubstantiated—and insufficient to withstand summary judgment. Moreover, Allied points out that TLM does not dispute that it had 21 days' advance notice before its eviction from its office, and TLM has provided no explanation for failing to preserve its records, despite having threatened litigation against Allied

on numerous occasions prior to TLM's eviction. Consequently, Allied seeks summary judgment on all TLM's claims. First, Allied argues that without any substantiating records, TLM cannot establish the fact, cause, or amount of its consequential damages, and that such damages were not foreseeable under the contract. Allied also argues that TLM's claim for intentional interference with economic relations must be dismissed because the elements have not been satisfied and also because the economic loss doctrine bars the claim.  As for TLM's quantum meruit claim, Allied contends that there is no basis for such a claim because a contract existed and TLM concedes that it was paid for its services. Allied also seeks summary judgment on TLM's claims for breach of the covenant of good faith and fair dealing, arguing that the claim cannot be invoked to rewrite the provisions of the contract.  Finally, Allied argues that TLM cannot recover attorney fees because they were not provided for in the contact.

    As an alternative basis for dismissal, Allied has also filed a Motion for Spoliation Sanctions, seeking dismissal of TLM's case for failing to preserve the records underlying its alleged damages. Allied also seeks its attorney fees. Each of these motions will be discussed separately.

## II. ALLIED'S MOTION FOR SUMMARY JUDGMENT

### A.  UNDISPUTED FACTS[1]

    Plaintiff TLM is a small company that provides security guard services within the state of Utah.  Mr. Charlie Tautuaa is its sole manager and member. Defendant Allied is a large contract security guard services company that sometimes needs to subcontract security guard services.

---

[1] These facts are considered undisputed solely for purposes of this motion.

In September 2021, Allied approached TLM about entering into a business arrangement whereby TLM would provide security guard services for Allied.

Under the oral arrangement, Allied would submit a work order to TLM that detailed the services requested. TLM would provide services according to the work order specifications and then submit invoices for the completed services. According to TLM, Allied agreed to pay for services "within thirty (30) days of receipt of the invoice." Beginning in November 2021, TLM provided services for Allied's clients. Soon thereafter, in January 2022, the parties entered into a written agreement (the "Subcontract"), which governs the parties' relationship. According to TLM, the Subcontract reflected "similar terms" as the prior oral agreement. The Subcontract provides:

> 1. SUBCONTRACTOR shall, during the term of this Agreement, perform such services as set forth in work orders and/or the attached addendum, which may be issued from time to time by [ALLIED]. Each work order and addendum shall be signed by a duly authorized representative of [ALLIED] and SUBCONTRACTOR and shall be subject to the terms and conditions set forth.

> 2. SUBCONTRACTOR shall furnish, at its own cost and expense, all labor, supervision, materials, tools, supplies, insurance, equipment, and all other items necessary or required for the performance of the Services and SUBCONTRACTOR shall pay, punctually and in fully, all payroll taxes and other costs based on payroll, including social security and unemployment and disability insurance required to be paid. SUBCONTRACTOR shall not subcontract out any worked hired into by [ALLIED] to another company without written approval by [ALLIED] management staff.

> \* \* \*

> 4. [ALLIED] shall pay SUBCONTRACTOR for the Services rendered at the rate(s) set forth below or in Work Order(s) (Appendix A). Payments shall be due and owing within thirty (30) days of receipt of invoice by [ALLIED] from the SUBCONTRACTOR. SUBCONTRACTOR shall bill at the end of each and every week and if properly billed, will be paid bi-weekly by [ALLIED].

* * *

**As part of your onboarding, once you complete this packet, you must continue on and register as a vendor online with Allied Universal. If you do not complete this next step, you will not be approved as an AUS vendor and your payment will be significantly delayed. Instructions for the online portal are outlined below.[2]**

There are no provisions in the Sublease that provide for damages for late payments, interest, or attorney fees, etc. TLM received work orders for the services requested, which uniformly provided for a guard, at a specified "pay rate," with "no" "additional fees."[3]

For purposes of this motion, the court has assumed that Allied sometimes failed to timely pay for TLM's services during the parties' relationship and that Allied therefore breached the Subcontract.[4] TLM agrees that Allied subsequently paid all past-due invoices but maintains that the untimeliness of the payments destroyed its business. By February and March 2022, TLM's account became dangerously low. TLM defaulted on certain operating obligations, harming TLM's relationships with suppliers, vehicle financers, and prospective clients. By April 2022, TLM was unable to make scheduled payments on its vehicles and office lease. TLM lost

---

[2] ECF No. 33-2, Ex A at TLM0030 – 0033 (emphasis in original).

[3] ECF No. 33 at 8.

[4] The court recognizes that if this case were to proceed to trial, Allied would argue that it did not breach the Subcontract and that any late payments were caused by TLM's failure to fulfill its obligations under the Subtract, such as by failing to sign up through the online vendor portal; failing to properly bill for its services; failing to properly submit company and payment information; changing its business and bank account information; submitting incorrect W-9 information; having its account frozen due to an Office of Foreign Assets Control ("OFAC") hold and various other problems. But because these facts are disputed by TLM, the court has assumed for purposes of this motion that Allied breached the Subcontract.

prospective business, defaulted on certain financial obligations, and began losing some of its

staff because TLM could not pay them on time. TLM was forced to shut down parts of its

operations and ultimately cease the business. Because TLM could not pay the rent for its office

space, TLM lost access to its financial documents. TLM does not dispute that it had at least 21

days' advance notice of its eviction.[5] TLM vaguely claims that it "made efforts to retrieve the

documents but [was] unable to do so,"[6] but TLM offers no details about the nature or timing of

the efforts it allegedly made, and it provides no explanation regarding why it did not copy or

remove its documents prior to being locked out of its office when it had indeed already

threatened litigation against Allied.[7]

Based on Allied's alleged breach, TLM seeks consequential damages for the following

items:

| Description | Amount |
| --- | --- |
| Light Show Salt Lake City – Service Agreement | $17,580 |
| Retail Security Services Contract | $21,600 |
| Cerro-wire – Service Agreement | $16,500 |
| Lodge at Blue Sky – Service Agreement | $252,000 |
| Lodge in Saint George – Service Agreement | $88,000 |
| Motel 6 in Saint George – Service Agreement | $72,000 |
| Stadler – Service Agreement | $350,000 |
| Double Tree Hotel – Service Agreement | $225,000 |
| Failed Sale of TLM Operations | $855,000 |
| Personal Credit Card Debt | $22,344 |
| Unpaid Employee Pay, Taxes, and Payroll | $53,610 |
| Vehicles Repossessed and Sold to Pay Debt | $30,411 |
| Unpaid Rent | $11,700 |
| Office Contract Violation Fee to Close Lease Contract | $23,400 |
| Other Debt Sent to Collection | $140,100 |
| Attorney Fees | --- |
| **Total** | **$2,179,245** |

---

[5] ECF No. 43 at 8.

[6] ECF No. 38 at 19.

[7] ECF No. 34 at 5.

TLM purportedly maintained a variety of financial records in its office, including income statements, balance sheets, cash flow statements, a general ledger, accounts receivable, payroll records, bank statements and reconciliations, tax records, invoices, bills, and profit and loss sheets.  Mr. Tautuaa calculated the above-listed damages based on his review of company records at TLM's office in March 2023, including invoices, profit and loss statements, debts, bills, and more.[8]

Admittedly, however, TLM does not have any documentation to show the fact or existence, cause, or amount of the damages it is claiming in this lawsuit.[9] And TLM has not designated any expert to opine on any issues in this case, and the time for designation has expired.

## B.    SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] In determining whether a genuine dispute of material fact exists, the court determines whether a reasonable jury could return a verdict for the nonmoving party in the fact of all the evidence presented.[11] The court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[12] Still, the nonmoving party must set forth more than a

---

[8]  ECF 38 at 11; ECF No. 33-6.

[9] ECF No. 33 at 6-7 ("But you recognize you haven't produced a single financial record this entire case? Correct. And I'll do my due diligence before this goes to trial, so.").

[10] Fed. R. Civ. P. 56(a).

[11] *Lazy S. Ranch Props., LLC v. Valero Terminaling and Dist. Co.*, 92 F.4th 1189, 1198 (10th Cir. 2024).

[12] *Id.*

"scintilla of evidence" in support of its position.[13] Summary judgment is "steeped in reality."[14] The nonmoving party may not rely on conclusory allegations, improbable defenses, speculation, conjecture, ignorance of facts, or suspicion.[15] "Unsubstantiated allegations carry no probative weight in summary judgment proceedings."[16] The nonmoving party must put forth specific, admissible facts showing that there is a genuine issue for trial.[17]

## C. DISCUSSION

Before addressing each of Allied's arguments, the court notes that this case is highly unusual because TLM does not provide a single document to substantiate its request for consequential damages. Specifically, it has not produced contracts with clients, purchase agreements, tax returns, accounting records, bank records, communications with its former or prospective clients, invoices, leases, records of company expenses, debts, company valuations, or any other financial records that would show when, where, why, or how the damages were allegedly incurred. TLM has not produced declarations from individuals who might substantiate the existence of any alleged oral contracts or even contact information for these individuals. Rather, TLM seeks over two million dollars in consequential damages based solely on its owner's recollection of his review of various documents over two years ago, as he was preparing to sue Allied, but before he "lost access" to such records.

---

[13] *Id.*

[14] *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1214 (10th Cir. 2022).

[15] *Id.* at 1200–01, 1214.

[16] *Id.* at 1200.

[17] Fed. R. Civ. P. 56(c)(4).

This oral testimony will simply not suffice to withstand summary judgment, particularly when TLM has failed to provide any reason for failing to preserve the alleged evidence after TLM was given 21 days' notice before it was evicted.

### 1. Consequential Damages

To recover consequential damages, a non-breaching party must prove (1) that consequential damages were caused by the contract breach; (2) that consequential damages ought to be allowed because they were foreseeable at the time the parties contracted; and (3) the amount of consequential damages within a reasonable certainty.[18] To show that the damages were actually suffered, each element must be proven with "reasonable certainty" and with non-speculative evidence.[19]

TLM has failed to create a disputed fact as to any of these three requirements, each of which will be discussed in turn.  First, where an injury may have come from multiple causes, a plaintiff must establish that its damages were proximately caused by the defendant and not the result of something else.[20]  A factfinder may make "deductions based on reasonable probabilities," but the "evidence must do more than merely raise a conjecture or probability as to proximate cause."[21] TLM merely speculates that Allied caused all the alleged damages

---

[18] *Mahmood v. Ross*, 1999 UT 104, ¶ 20, 990 P.2d 933, 938 (citing Dan B. Dobbs, *Handbook on the Law of Remedies* § 12.3, at 798 (1973)); *Billings v. Union Bankers Ins. Co.,* 918 P.2d 461, 466 (Utah 1996) (stating that consequential damages are limited to those reasonably foreseeable or contemplated by the parties when contract was entered into); *Heslop v. Bank of Utah,* 839 P.2d 828, 840–41 (Utah 1992) (same).

[19] *See e.g.*, *Mahmood*, 990 P.2d at 938; *GeoMetWatch Corp.*, 38 F.4th at 1195, 1201.

[20] *GeoMetWatch Corp.*, 38 F. 4th at 1201

[21] *Id.* at 1201–02 (quoting *Mahmood*, 990 P.2d at 939) (cleaned up).

9

because TLM's "problems didn't start until Allied stopped paying us on time."[22] But there are no documents to substantiate this allegation, and there is no testimony from sources to corroborate Mr. Tautuaa's belief. Yet, as Allied explored in Mr. Tautuaa's deposition, there are several other plausible reasons for the failure of TLM's business, including poor management, lack of oversight, overleverage, or diverting more than $200,000 to purchase airplanes and start a new business instead of paying TLM's employees.[23] TLM's bald assertion that Allied's untimely payments caused the claimed consequential damages, with nothing more, does not establish that the consequential damages were by Allied's breach of the Subcontract.[24] There is even testimony that other business entities failed to timely pay TLM.[25] There is simply no information that would allow a reasonable factfinder to find by a preponderance of the evidence that any of Allied's allegedly late payments caused a particularized harm.

Second, TLM has failed to create a disputed fact on the issue on foreseeability. Consequential damages must be foreseeable at the time the parties enter into the contract.[26] "Mere knowledge of possible harm is not enough; the defendant must have reason to foresee, as a probable result of the breach, the damages claimed."[27] Nothing in the Subcontract illustrates that any consequential damages were foreseeable because neither the Subcontract nor the work orders make any mention of consequential damages. And in fact, they

---

[22] ECF No. 33 at 10.

[23] ECF No. 33 at 13.

[24] *GeoMetWatch Corp.*, 38 F.4th at 1200 (noting "statements of mere belief" and unsubstantiated allegations" must be disregarded on summary judgment).

[25] ECF No. 42 at 4.

[26] *Mahmood*, 990 P.2d at 938.

[27] *Ranch Homes, Inc. v. Greater Park City Corp.*, 592 P.2d 620, 624 (Utah 1979).

affirmatively indicate that TLM was to be compensated solely for the "services rendered" with "no" additional fees.

TLM argues that when Allied first negotiated the oral contract, Allied was aware that TLM was a small business and, as such, it should have been foreseeable that any untimely payments would set off a cascading chain of events. But again, TLM has offered no evidence beyond Mr. Tautuaa's vague assertions. TLM also relies on texts that were sent between TLM and Allied beginning in April 2022 (after the Subcontract was executed) to demonstrate that TLM told Allied that TLM needed timely payments to avoid defaulting on various obligations,[28] but TLM fails to understand that the damages had to be foreseeable at the time the contract began—not months later.  TLM argues, based on Mr. Tautuaa's Declaration, that "Allied, as a large security services corporation, understood that small subcontractors like TLM rely on consistent cash flow to maintain operations."[29] Such a statement is inadmissible because Mr. Tautuaa provides no foundation for such a statement, and he cannot testify about what Allied allegedly understood.

Not only does TLM fail to provide evidence from which a reasonable fact finder could determine that TLM's requested consequential damages were caused by Allied's alleged breach of the Subcontact or that the consequential damages were foreseeable at the time the parties contracted, but it also fails to provide evidence from which a reasonable fact finder could determine the amount of consequential damages with reasonable certainty. Rather, TLM's damage calculations are based solely on the information contained in numerous records, which, have not been produced in this case. Those records include written contracts with

---

[28] ECF No. 38-3, Exhibit 2.

[29] ECF No. 38 at 28.

clients, purchase agreements, invoices, payment histories, profit and loss statements, evidence of debt, contracts, contract violations, and other discrete and determinable financial information.[30] Before filing this lawsuit, TLM supposedly reviewed these records to determine "where the money went" and to determine its damages against Allied.[31]

Allied contends that Mr. Tautuaa's testimony about those records, which he reviewed more than two years ago, is hearsay and in violation of the best evidence rule.[32] TLM, however, argues that because it was forced to relinquish the office because of Allied's alleged late payments, it is entitled to prove the substance of those missing records through other means, including Mr. Tautuaa's firsthand testimony.

The court agrees with Allied that the best evidence rule precludes Mr. Tautuaa from testifying about the amount of consequential damages. Mr. Tautuaa attempts to summarize the contents of a variety of TLM's financial documents, reviewed years ago, without providing any of those underlying documents. This is not a situation in which the financial records may have been innocently lost or destroyed. Rather, even though TLM had threatened to sue Allied months before it was evicted from its office, there is no evidence that TLM took any affirmative steps to preserve those indispensable records before it was evicted, and there is no evidence that there were circumstances that somehow precluded TLM from preserving the records. TLM has similarly not provided any evidence of attempting to use judicial processes to obtain records, such as subpoenaing the landlord to try to obtain access to the documents.  There is also no affirmative evidence that the records have indeed been lost or destroyed. Thus, the

---

[30] ECF No. 33 at 9-11.

[31] *Id.* at 9-10.

[32] Fed. R. Evid. 1004.

court finds that TLM's failure to preserve these records, particularly when it was affirmatively contemplating litigation against Allied, prohibits the use of admitting secondary evidence regarding such documents.

There are some documents that TLM alleges never existed, such as its contract to merge with another company. TLM contends that this purported merger agreement was an oral agreement. But TLM has not offered any corroborating evidence, such as a declaration from the individual with whom he entered this alleged oral contract. Mr. Tautuaa's own self-serving testimony, which lacks any detail, would not permit a reasonable fact finder to award such damages.

Consequential damages require evidence that allows a "just and reasonable estimate" based on relevant data.[33] Thus, even if Mr. Tautuaa were permitted to testify about TLMs damages, he would be unable to furnish any details to establish, with reasonable certainty, the amount of TLM's alleged damages. While some degree of uncertainly is tolerable in damage calculations, some supporting evidence is required.[34] To survive summary judgment, TLM must offer probative evidence—not unsubstantiated allegations, statements of mere belief, or speculation that it will be able to show its damages computation at trial.[35] Here, TLM's claims for consequential damages "teem with uncertainty" and must be dismissed.[36]

---

[33] *Diversified Striping Sys. Inc. v. Kraus*, 516 P.3d 306, 318 (Utah Ct. App 2022).

[34] TLM seems to misapprehend the nature of a summary judgment motion.  It states that it "fully acknowledges that it bears the burden of proof regarding its damages at trial." ECF No. 38 at 26.  But the time to come forward with evidence was during the briefing of this motion.

[35] *See GeometWatch Corp. v. Behunin*, 38 F.4th 1183, 1200-01 (10th Cir. 2022).

[36] *See Shively v. Utah Valley University*, No. 2:20-cv-00119, 2022 WL 1021614, at *7 (10th Cir. Apr. 6, 2022).

In summary, without the underlying records, TLM cannot prove the fact, cause, or amount of any of the more than $2 million in consequential damages that it is claiming in this lawsuit, and thus, Allied's motion for summary judgment regarding TLM's request for consequential damages is granted.

### 2. Intentional Interference with Economic Relations

To establish a claim for intentional interference with economic relations, a plaintiff must prove (1) the defendant intentionally interfered with an existing or a potential economic relationship; (2) that the defendant did so by improper means; and (3) that the defendant's interference caused harm to the plaintiff.[37]  As set forth above, without any documents or other testimony to support its claim, TLM cannot establish that it had existing or potential economic relationships, nor can TLM establish that Allied caused the loss of those relationships. TLM also cannot establish that it suffered any consequential damages from the alleged interference.

Moreover, even if payments were untimely and in breach of the Subcontract, untimely payments do not constitute "improper means" under Utah law regarding intentional interference claims. Improper means are those actions that are "contrary to law, such as violations of statutes, regulations, or recognized common-law rules."[38] Examples include "violence, threats or intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, . . . disparaging falsehood," or violating "an established standard of a trade of

---

[37] *Mumford v. ITT Commercial Finance Corp.*, 858 P.2d 1041, 1043 (Utah Ct. App. 1993).

[38] *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982).

profession."[39] Untimely payments are not within the ambit of "improper means," even if TLM

could establish that the delayed payments were in breach of the Subcontract.

Finally, TLM's intentional interference claim is barred by the economic loss doctrine.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary

between contract law, which protects expectancy interests created through agreement

between the parties, and tort law, which protects individuals and their property from physical

harm by imposing a duty of reasonable care."[40] The allegations underpinning TLM's intentional

interference claim are wholly duplicative of its breach of contract claim. Accordingly, TLM's

cause of action for intentional interference with economic relations is dismissed.

### 3. Quantum Meruit/Unjust Enrichment

Quantum meruit is only available in the absence of a contract.[41] TLM concedes,

however, that a contract existed between the parties, which makes a quantum meruit action

improper. Even if it were available, TLM cannot recover because it does not seek the proper

measure of damages. Quantum meruit only allows for recovery for benefits conferred on

another—not the harm suffered by the plaintiff. But, here, TLM seeks only consequential

damages and concedes that it has been paid for all past due invoices. Because TLM does not

seek the appropriate type of damages, its quantum meruit claim must also be dismissed

---

[39] *Id.*

[40] *Thorp v. Charlwood*, 501 P.3d 1166, 1172–73 (Utah App. 2021) (noting economic loss rule "prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute"); *Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, No. 1:20-cv-00089, 2022 WL 36878, at *4–5 (D. Utah Jan. 3, 2022) (holding economic loss doctrine prohibits claim for intentional interference with economic relations).

[41] *Davies v. Olson*, 746 P.2d 264, 268 (Utah 1987) ("Recovery under quantum meruit presupposes that no enforceable written or oral contract exists.").

because TLM has never claimed, much less provided any evidence of, any damages under its newly asserted disgorgement theory.

### 4. Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing is "an implied duty that contracting parties refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract."[42] The covenant may be recognized "only where it is clear from the parties 'course of dealings' or a settled custom or usage of trade that the parties undoubtedly would have agreed to the covenant if they had considered and addressed it."[43] However, the covenant may not be invoked to "create obligations 'inconsistent with the express contractual terms.'"[44]

The claim for breach of the covenant of good faith and fair dealing must be dismissed as duplicative of the breach of contract claim. The covenant exists in only narrow circumstances where the parties failed to account for a particular term as part of their contract negotiations. That is not the case here, and the claim is hereby dismissed.

### 5. Attorney Fees

Because the court has found that TLM claim for consequential damages fails, its request for attorney fees is moot.  But even if TLM was entitled to pursue its consequential damages claim, attorney fees would not be available. Utah follows the American Rule for recovery of

---

[42] *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 816 (Utah 2011).

[43] *Id.* at 817.

[44] *Id.*; *see also Malibu Inv. Co. v. Sparks*, 996 P.2d 1043, 1049 (Utah 2000) ("[W]e will not interpret the implied covenant of good faith and fair dealing to make a better contract for the parties than they made for themselves. Nor will we construe the covenant 'to establish new, independent rights or duties not agreed upon by the parties.'").

attorney fees.[45] A party may recover its attorney fees only when provided for by statute or contract.[46] Where a contract is involved, attorney fees are allowed "only in strict accordance with the terms of the contract."[47] The Subcontract makes no mention of recovery of attorney fees. TLM claims it should be entitled to seek its attorney fees under Utah's bad faith fee statute.[48] However, the bad faith statute is inapplicable to federal courts sitting in diversity jurisdiction as it conflicts with federal procedure,[49] and there is also no evidence of bad faith on the part of Allied.

For the above reasons, Allied's Motion for Summary Judgment on all TLM's claims is granted, and TLM's causes of action against Allied are dismissed.

### III. ALLIED'S MOTION FOR SPOLIATION SANCTIONS

Separate and apart from its Motion for Summary Judgment, Allied seeks dismissal of TLM's case based on TLM's failure to preserve the evidence it needed to pursue the instant action. TLM, however, argues that, "[a]t most, TLM inadvertently lost documents due to financial hardship directly caused by Allied's breach." TLM asserts that there was no bad faith or substantial prejudice, and thus, the motion should be denied. The court, however, agrees with Allied and dismisses TLM's case on this independent ground.

---

[45] *Butler v. Mediaport Entertainment, Inc.*, 508 P.3d 619, 633 (Utah Ct. App. 2022).

[46] *Id.*

[47] *Id.*

[48] *See* Utah Code § 78B-5-825.

[49] *Banner Bank v. Smith*, 30 F. 4th 1232, 1241 (10th Cir. 2022).

### A. BACKGROUND[50]

On February 24, 2023, TLM sent several emails to Allied demanding immediate payment and threatening litigation, including submitting two signed small claims affidavits reciting the same allegations but for different damages amounts—$560,078 and $1,560,078.[51] TLM continued to threaten lawsuits over the ensuing weeks.[52] Then, in early April 2023, TLM sent an email to Allied in a "last attempt" to collect "outside of court" for December, January, and February invoices.[53] TLM filed the instant lawsuit in August 2023 due to the alleged payment delays.

In March 2023, after threatening to sue Allied and retaining legal counsel, Mr. Tautuaa reviewed TLM's records at its company office for the purpose of suing Allied. Thereafter, TLM received notice that it would be evicted for failing to pay past due rent. Despite that warning, TLM did not remove or copy its business records. TLM failed to pay its rent and claims it "lost" access to the records. At approximately the same time, Mr. Tautuaa diverted more than $200,000 to an entirely new business venture, using the funds to purchase two airplanes.[54]

TLM then sued Allied, blaming Allied for the absence of records, as well as the absence of contact information for key individuals—such as the landlord with possession of the records.

---

[50] The facts pertaining to the summary judgment motion are also relevant to the instant Spoliation Motion, but there are additional facts that pertain to this motion that were not set forth by the parties in the summary judgment briefing or were not relevant to that motion.

[51] ECF No. 34 at 3.

[52] *Id.*

[53] *Id.*

[54] *Id.* at 6.

TLM asserts that its damages were the "direct result of" or "caused" by Allied's alleged violation of the Subcontract.

To evaluate these claims, Allied requested numerous categories of records to substantiate TLM's damages claims, including those related to payment histories, mergers or sales, service agreements or client contracts, debts, payroll, financial status (including profit and loss statements and tax returns), and others. But TLM did not provide any documents in response. Rather, TLM claimed that it was unable to produce any documentation relating to its damages or financial status because of "unpaid service subscriptions" and the "failure to TLM to timely pay its bills," which it also claims is the "direct result" of Allied's purportedly untimely payments.

TLM maintained numerous financial records at its offices in Orem, Utah. In March 2023, Mr. Tautuaa reviewed company financial records at the office for the express purpose of "[t]rying to figure out what Allied owed." In early April 2023, TLM received notice from its landlord that it would be evicted at the end of the month for not paying approximately $4,000 in rent. Even though he knew TLM would lose access to the building where these critical records were kept, Mr. Tautuaa did not pay the money necessary to retain access to the building, or remove, copy, or preserve the any of the records in the office.

Previously, in late 2022, TLM had purportedly entered into an oral agreement to purchase another security company, which included making an initial down payment of $280,000 from the company's reserve funds. The merger did not occur. Roughly $250,000 of the deposit was returned to TLM in March 2023, providing TLM with ample funds to retain its

business records.[55] But instead of paying TLM's rent or otherwise preserving the records, Mr. Tautuaa diverted at least $200,000 to purchase multiple airplanes and start an airline company.[56] During his deposition, Mr. Tautuaa testified that he used $200,000 from merger and money from "security employees that were not paid yet" to finance the airplanes.[57]

## B. DISCUSSION

"Spoliation is the intentional destruction or significant alteration of evidence . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[58] A "district court possesses inherent power to sanction a party that destroys or loses evidence."[59] Spoliation sanctions are appropriate when (1) the spoliated evidence is relevant to an issue at trial; (2) a party has a duty to preserve the evidence; and (3) the non-spoliating party was prejudiced by the destruction of evidence."[60]  The *Turner* factors are satisfied here, and the only appropriate sanction is dismissal.

### 1.  The Turner Factors

First, the records in TLM's office are relevant. This case involves allegations of more than $2,000,000 in consequential damages allegedly caused by delayed payments. TLM's financial records are integral to the key issues in this dispute, including the existence, amount, and cause of the damages being claimed.[61] Mr. Tautuaa reviewed TLM's records for the purpose of

---

[55] *Id.* at 5-6.

[56] *Id.* at 6.

[57] *Id.*

[58] *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1309 (D. Utah 2016).

[59] *Webb v. Scott*, No. 1:11-cv-128, 2014 WL 1787948, at *2 (D. Utah May 5, 2024).

[60] *Turner v. Public Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

[61] *See, e.g., Mahmood v. Ross*, 990 P.2d 933, 938 (Utah 1999).

determining TLM's damages, and to "figure out . . . where the money went."[62] As Mr. Tautuaa admits, the records are the very basis of this lawsuit.

Second, TLM had a duty to preserve the records in its office, well before they were spoliated in late April 2023. The duty to preserve arises pre-litigation when a party has notice that future litigation is likely or imminent.[63] A "demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence."[64] TLM's duty to preserve was triggered by no later than February 24, 2023, when Mr. Tautuaa sent numerous emails threatening a lawsuit against Allied. This included a demand for immediate payment, or else TLM would "waste every effort taking Allied to court." Mr. Tautuaa also sent emails attaching signed small claims affidavits. Litigation remained foreseeable in March 2023 and April 2023, when TLM retained legal counsel, reviewed the now-spoliated records for the purpose of suing Allied, and continued to threaten Allied with a lawsuit. Each of these events occurred before TLM lost access to its records.

TLM violated its duty to preserve the records. After receiving advance notice that it would lose access to its office, TLM failed to remove, copy, or preserve the records it just reviewed for developing its damages disclosures for this case. At the same time, Mr. Tautuaa diverted at least $200,000 from TLM's reserve fund to start an entirely new business venture. In short, TLM deliberately "lost" the records underlying this entire lawsuit.

Third, Mr. Tautuaa's and TLM's prelitigation conduct irreparably prejudiced Allied by

---

[62] ECF No. 34 at 5.

[63] *Philips Electronics N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1195 (D. Utah 2011); *see also Schnenkel*, 200 F. Supp. 3d at 1309.

[64] *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D. W.Va. 2014).

concealing the evidence that underlies TLM's damages claims.[65] Allied cannot evaluate or challenge TLM's claimed damages without substantial effort and cost, and still Allied would have an incomplete picture. For example, TLM's profit margins in 2020, 2021, 2022, or 2023 are unknown without, of course, examining the company's records. Mr. Tautuaa also "lost" the contact information for critical witnesses, such as the landlord, supposed buyer, and former manager of TLM.[66] Mr. Tautuaa is now the only source of the information allegedly contained in those records. However, since late 2021, an employee named Mr. Brian Hartley was primarily responsible for TLM's employment matters, finances, invoices, staffing, and running the business. Mr. Hartley was identified in TLM's Rule 26 disclosures as expected to testify about damages. But when Allied requested Mr. Hartley's deposition, TLM was unable to locate him and, instead, provided a non-working company email and an inactive company-issued cell phone number that Mr. Tautuaa "stopped paying for" well over a year ago.[67] Allied has not been able to locate Mr. Hartley. In effect, TLM filed a lawsuit knowing that it lacked the critical evidence, forcing Allied to undergo costly litigation and pursue futile discovery.

Allied has offered evidence that, in the absence of records, Mr. Tautuaa has changed his story whenever he believes it is beneficial for his case. For example, Mr. Tautuaa testified that

---

[65] *See, e.g.*, *Jordan F. Miller Corp. v. Mid-Continent Aircraft Service, Inc.*, No. 97-5089, 1998 WL 68879, at *6 (10th Cir. 1998) (finding prejudice because the missing evidence was "critical to the defense" and affirming dismissal of case); *Fox v. Steepwater LLC*, No. 2:16-cv-796, 2018 WL 2208308, at *3 (D. Utah May 14, 2018) (finding prejudice because the non-movant was "the only person who had notes from the alleged July meeting and others who supposedly attended have no recollection of it occurring.").

[66] ECF No. 34 at 9.

[67] *Id.*

all of TLM's clients, except for Allied, paid within 30 days of invoicing.[68] However, in a text message to Allied, he told Allied that TLM had "2 clients who are about 5 months behind on payments and another 2 at around 2-3 months behind."[69] Mr. Tautuaa admitted that he wrote the text message, and then claimed that the text message—not his testimony—was "a lie" he fabricated and sent to Allied.[70] But, in his deposition, Mr. Tautuaa admitted that TLM sued at least one other client for being late on payments.[71] These inconsistencies go to central issues in this case, including TLM's alleged damages and cause of those damages. But without any records to challenge Mr. Tautuaa's testimony, Allied has been prejudiced.

Although TLM contends that Allied demonstrated a "lack of diligence" in obtaining the records, and has therefore not suffered any prejudice,[72] TLM misunderstands its burden and its responsibilities. First, a party may initiate a lawsuit only after a reasonable inquiry.[73]  The factual contentions must have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further inquiry and investigation.[74] Blind trust in a client's conclusory statements do not suffice. A plaintiff and its attorney must undertake a reasonable inquiry after filing the lawsuit.[75] Here, TLM alleges $2 million in consequential damages without

---

[68] ECF No. 42 at 4. Mr. Tautuaa was asked in his deposition, "So no one else ever paid anything past the 30-day mark? He responded, "No. Never."

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] ECF No. 39 at 8-9.

[73] Fed. R. Civ. P. 11(b).

[74] *Id.*

[75] *See, e.g.*, *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996) ("Absent

any evidence. And it has done nothing to investigate or gather any records to corroborate its unsupported claims. TLM contends that Allied should have exhausted all efforts to locate Mr. Hartley and TLM's landlord by searching public records, subpoenaing phone records, researching eviction proceedings, or other independent research.[76] But this argument illustrates Allied's prejudice, which directly results from TLM's spoliation of the evidence.

The little information that Allied has been able to uncover—at substantial cost— suggests that TLM's claims are unmeritorious. The day after Mr. Tautuaa's deposition, Allied called the individuals identified in TLM's Rule 26 disclosures and discovery responses. Mark Birch (misidentified as Mark Sorenson in TLM's discovery) responded and provided his text messages with Mr. Tautuaa, which confirm that neither TLM nor Defense Security aka Sentinel Security Services entered into any written or oral merger agreement—much less that TLM was $14,000 short of the necessary funds to finalize the deal.[77] And Allied discovered various other potential misrepresentations, as set forth in its Reply Memorandum.[78]

### 2. The Only Appropriate Remedy Is Dismissal of the Lawsuit

Case terminating sanctions require evidence of "willfulness, bad faith, or some fault."[79]

---

. . . extenuating circumstances, an attorney cannot simply rely on the conclusory representations of a client, even if the client is a long-time friend."); *Hendrix v. Naphtal*, 971 F.2d 398, 400 (9th Cir. 1992) (holding "blind reliance" on client to decide ultimate issue "does not constitute reasonable inquiry"); Fed. R. Evid. 1004(b) (allowing alternative evidence only after proponent demonstrates original cannot be obtained by "any available judicial process").

[76] ECF No. 39 at 9.

[77] ECF No. 42 at 6.

[78]  ECF No. 42 at 6-8.

[79] *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005); *see also Schenkel*, 200 F. Supp. 3d at 1301.

Bad faith does not require "ill will." It can be satisfied by an intentional or reckless disregard of the rules, "substantial and prejudicial obduracy," conduct that delays or disrupts the litigation, or unreasonable conduct culminating in the violation.[80]

Five factors must be evaluated when determining the appropriateness of case terminating sanctions: "(1) the degree of actual prejudice to the opposing party, (2) the degree of interference with the judicial process, (3) the litigant's culpability, (4) whether the litigant was warned in advance that dismissal was a likely sanction, and (5) whether a lesser sanction would be effective."[81]

Here, dismissal is the only appropriate sanction. First, TLM's office records are its only financial records (e.g., invoices, profit and loss statements, contracts) that can authoritatively show the basis for TLM's claimed damages—including the existence, amount, and cause. Without these records, Allied can only cross-examine Mr. Tautuaa based on his review of those records nearly two years ago.

Next, the degree of interference in the judicial process here is extraordinary as it turned discovery into a futile exercise. TLM's inability to provide physical addresses for critical witnesses, such as Mr. Hartley and TLM's landlord, has compounded the futility by preventing Allied from locating other records and witnesses.

TLM's culpability is also extraordinary. It sent demand letters, threatened litigation, retained an attorney, and reviewed the now-spoliated records for the purpose of initiating this lawsuit against Allied. TLM then received advance notice that it would be evicted from its office,

---

[80] *Schenkel*, 200 F. Supp. 3d at 1301–02; *see also Philips Electronics N. Am. Corp.*, 773 F. Supp. 2d at 1203; *Silvestri v. General Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001).

[81] *Schenkel,* 200 F. Supp. 3d at 1302.

where its critical records were kept. TLM could have removed or copied its business records or paid its rent. Instead, it diverted over $200,000 to an entirely new business venture. Then after "losing" its records, TLM sued Allied for millions without producing any evidence.

Finally, a prior court warning is not a requirement for case terminating sanctions,[82] and in any event such a warning is irrelevant here, where the litigant destroys the essential records before filing a lawsuit based on those very records.  The court agrees with Allied that the only appropriate sanction is to dismiss TLM's lawsuit with prejudice. Any lesser sanction would only encourage this wrongful conduct. That is especially the case here where Mr. Tautuaa seeks a windfall while hiding behind a corporate shell of his own making. Any lesser sanction, such as an award of attorney fees or adverse inference, would not remedy the substantial time and expense to develop alternative sources of information, piece everything together, and then still be left with an incomplete picture. And an adverse inference would necessarily result in dismissal, where the documents underlie all of TLM's damages, and significant time, money, and judicial resources would be wasted. Accordingly, dismissal is the only appropriate sanction. The court, however, declines to award attorney fees to Allied.

## IV.  CONCLUSION

Allied has demonstrated that that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law." Accordingly, Allied's Motion for Summary Judgment [ECF No. 33] is GRANTED, and TLM's claims for (1) consequential damages stemming from the alleged breach of contract, (2) intentional interference with economic relations; (3)

---

[82] *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180–81 (10th Cir. 2009) (dismissing with prejudice despite no prior warning).

Quantum Meruit/Unjust Enrichment, (3) Breach of Implied Covenant of Good Faith and Fair

Dealing are DISMISSED with prejudice.

Alternatively, Allied's Motion for Spoliation Sanctions [ECF No. 34] is GRANTED IN PART

AND DENIED IN PART. TLM's action is dismissed with prejudice for failing to preserve the

records underlying its alleged damages, but the court declines to award attorney fees.

Judgment will be entered accordingly.

DATED this 30th day of September 2025.

BY THE COURT:

DALE A. KIMBALL
United States District Judge